<u>**NOT FOR PUBLICATION**</u>

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| IMPORTERS SERVICE CORPORATION, | Case No. 22cv4640 (EP) (JBC) |
| Plaintiff, | **OPINION** |
| v. | |
| MARIO ALIOTTA, et al., | |
| Defendants. | |

**PADIN, District Judge.**

      Plaintiff Importers Service Corporation d/b/a ISC Gums ("ISC") brings this action against several Defendants, including Defendant Mario Aliotta and several corporate entities he owns and/or controls, following over a decade of ISC raw gum purchases from international suppliers through a third-party intermediary owned by Aliotta, Defendant RE International ("REI").  *See* D.E. 32 ("FAC").  Defendants[1] move to dismiss ISC's First Amended Complaint ("FAC") on two theories: the Court may not properly exercise personal jurisdiction over certain Defendants pursuant to Federal Rule of Civil Procedure 12(b)(2); and ISC has not stated a claim upon which relief can be granted pursuant to Rule 12(b)(6).  *See* D.E. 33-1 ("Mot.").  The Court decides the motion without oral argument.  *See* Fed. R. Civ. P. 78(b); L.Civ.R.78(b).  For the reasons set forth below, Defendants' motion will be **GRANTED** *in part* and **DENIED** *in part.*

---

[1] References to Defendants exclude Defendant Re Due Sicilie Limited.

## I.    BACKGROUND[2]

### A. Parties

Plaintiff ISC is a New Jersey-based corporation.  FAC ¶ 1.  Defendant Mario Aliotta[3] is an Italian national and resident of the United Kingdom.  *Id.* ¶ 2.  Defendant REI is a corporate entity organized under the laws of England and Wales.  *Id.* ¶ 3.  Aliotta incorporated and is the sole director of REI.  *Id.*

The remaining named Defendants are all corporate entities organized under the laws of England and Wales, all of which Aliotta either currently controls and/or owns or previously did.[4] *Id.* ¶¶ 4-9.  These Defendants are Aliotta Holdings Limited, *id.* ¶ 4, RE Due Sicile Limited, *id.* ¶ 5, Aliotta Holdings Service Company Limited, *id.* ¶ 6, I Love Food Limited, *id.* ¶ 7, WSA Construction Limited, *id.* ¶ 8, and RE Agriculture Limited, *id.* ¶ 9.[5]

### B. Factual Background

ISC imports consignments of raw gums[6] from suppliers, largely based in Africa, into the United States.  FAC ¶ 18.  The imported Gum Products are then processed in ISC's New Jersey plant and subsequently sold domestically or exported to its wholly owned subsidiary, ISC Europe Limited ("ISC Europe"), to be sold abroad.  *Id.* ¶¶ 26-28.[7]

---

[2] The facts in this section are taken from the well-pled factual allegations in the FAC, which the Court presumes to be true for purposes of resolving the instant motion to dismiss.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[3] The only individual Defendant.

[4] With the exception of RE Agriculture Limited.  Aliotta's sister is the sole director of this entity, but her shares are held, in part, by Aliotta Holdings Limited, which Aliotta owns and controls.  *See* FAC ¶¶ 4, 9.

[5] These corporate entities are herein collectively referred to as "Aliotta Entities," except for RE Due Sicile Limited.

[6] Specifically, Gum Acacia, Gum Arabic, Gum Karaya, and Gum Tragacanth (collectively, "Gum Products").

[7] In approximately May 2006, ISC hired Aliotta to serve as a director ISC Europe.  *Id.* ¶ 28.

However, instead of purchasing Gum Products directly from suppliers, ISC places orders through third-party intermediaries by telling them how much product ISC needs at any given time. *Id.* ¶ 19.  ISC does not have exclusivity agreements with the third-party intermediaries, and ISC was not obligated to accept any Gum Products' offers presented to it by the third-party intermediaries.  *Id.* ¶¶ 21-22.

For well over a decade, REI acted as one of these third-party intermediaries for ISC.  *Id.* ¶¶ 24, 30.  Through their repeated course of dealings over this time period, ISC and REI purportedly developed an understanding that the prices presented to ISC by REI from suppliers would include no more than $50 per metric ton as commissions to REI for facilitating the transaction.  *Id.* ¶ 31; *see also* FAC, Exh. C (2009 email from Aliotta to ISC stating, "[t]his price includes me but not 50 USD but 25. It is up to you if you want to give me the other 25 USD….").  The standard commission in the industry for third-party intermediaries like REI ranged from $25 to $50 per metric ton.  FAC ¶ 33.

Beginning in approximately April 2016, Aliotta and REI began sending offers to ISC that inflated the suppliers' prices and/or the commissions that REI and Aliotta would receive beyond $50 per metric ton.  *Id.* ¶ 36.  REI's offers were memorialized in invoices prepared and/or sent by Aliotta—bearing REI's logo—to ISC; these invoices provided: the approximate date of the offer, the Gum Product being offered, the quantity offered, and the offer price.  *Id.* 7; *see also* FAC, Exh. A (multitude of invoices).  However, according to ISC, REI's Gum Products' offer prices did not reflect the true offer prices provided by suppliers, nor did REI's offers note that REI and Aliotta's commissions would exceed $50 per metric ton.  *See* FAC ¶¶ 38-44.

In approximately October 2019, a Sudanese supplier contacted ISC inquiring about an unrelated issue.  *See id.* ¶ 45.  During conversations between that supplier and ISC, ISC learned

that the supplier's offer prices to REI differed from the offer prices REI presented to ISC.  *Id.* ¶ 46.

In approximately September 2021, the same Sudanese supplier contacted ISC inquiring about missing payments from REI, despite ISC having paid REI for the relevant orders.  *Id.* ¶ 48. When ISC confronted Aliotta about the issue, Aliotta responded that the payments were not made to the supplier due to a pending lawsuit that REI filed against the supplier for disclosing the pricing information to ISC.[8]  *Id.* ¶¶ 49-50.

ISC then obtained numerous invoices that the suppliers had sent to REI.  *Id.* ¶ 50.  After comparing the invoices it received from REI to those provided directly by the suppliers, ISC discovered over forty instances, between 2016 and 2021, in which the offer prices and/or commissions were excessive.  *Id.* ¶ 51 ("A 2016 offer to sell 260 [metric ton] of product from UAG which was misrepresented by [REI] as having a price $1,260 per [metric ton], including its $50 per [metric ton] commission but whose supplier price was actually $1,150 per [metric ton]."). ISC preliminarily estimates that REI's misrepresentations cost ISC $1,225,907 in excess commissions and/or overpayments.  *Id.* ¶ 54.

**C.  Procedural Background**

On July 19, 2022, ISC filed its Initial Complaint against Defendants.  D.E. 1.  Defendants moved to dismiss the Initial Complaint for lack of personal jurisdiction over certain Defendants pursuant to Federal Rule of Civil Procedure 12(b)(2), as well as for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6).  D.E. 13.  ISC then moved for leave to file a FAC.

---

[8] REI's agreements with suppliers included a provision that the suppliers were prohibited from contacting ISC directly.  FAC ¶ 47; *see also* FAC, Exh. E.

D.E. 22.  Before either motion was decided, the parties consented to permit ISC to file a FAC. D.E.s 26, 30.

On December 7, 2022, ISC filed its FAC against Defendants.  Defendants subsequently moved to dismiss the FAC for lack of personal jurisdiction over Aliotta and the Aliotta Entities pursuant to Federal Rule of Civil Procedure 12(b)(2), as well as for failure to state a claim against Defendants pursuant to Rule 12(b)(6).  D.E. 33-1 ("Mot.").  ISC filed an opposition brief.  D.E. 35 ("Opp'n").  Defendants filed a reply brief.  D.E. 38 ("Reply").  This motion is now ripe for decision.

## II.   LEGAL STANDARDS

### A.  Federal Rule of Civil Procedure 12(b)(2)

Rule 12(b)(2) permits the dismissal of a case for "lack of personal jurisdiction."  It is the plaintiff's burden to demonstrate "the facts that establish personal jurisdiction."  *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 368 (3d Cir. 2002).  However, where a court "resolves the jurisdictional issue in the absence of an evidentiary hearing and without the benefit of discovery, the plaintiff need only establish a prima facie case of personal jurisdiction."  *Otsuka Pharm. Co. v. Mylan Inc.*, 106 F. Supp. 3d 456, 461 (D.N.J. 2015).  Unlike a motion to dismiss for failure to state a claim, the plaintiff may not rely solely on the pleadings to overcome a defendant's jurisdictional defense; instead, the plaintiff must demonstrate by sworn affidavits or other competent evidence that jurisdiction is proper.  *See, e.g.*, *Time Share Vacation Club v. Atl. Resorts, Ltd.*, 735 F.2d 61, 66 n.9 (3d Cir. 1984); *Weber v. Jolly Hotels*, 977 F. Supp. 327, 331 (D.N.J. 1997).  In response, the defendant "must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable."  *Mellon Bank PSFS, Nat'l Ass'n v. Farino*, 960 F.2d 1217, 1226 (3d Cir. 1992) (citation omitted).

In reviewing a motion to dismiss for lack of personal jurisdiction, the reviewing court takes the plaintiff's well-pled allegations as true and construes all disputed facts in favor of the plaintiff. *See, e.g.*, *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 97 (3d Cir. 2004); *Carteret Sav. Bank v. Shushan*, 954 F.2d 141, 142 n.1 (3d Cir. 1992). Moreover, the reviewing court "may always revisit the issue of personal jurisdiction if later revelations reveal that the facts alleged in support of jurisdiction main in dispute." *Id.* at 462 n.5 (citation omitted).

The exercise of personal jurisdiction requires a two-step inquiry: (1) "whether the relevant state long-arm statute permits the exercise of jurisdiction[; and (2)] if so, [whether] the exercise of jurisdiction comports with due process [under the Fourteenth Amendment.]" *Display Works, LLC v. Bartley*, 182 F. Supp. 3d 166, 172 (D.N.J. 2016) (citing *IMO Indus., Inc. v. Kiekert AG*, 155 F.3d 254, 258-59 (3d Cir. 1998)). Because New Jersey's long-arm statute extends jurisdiction over non-residents "to the uttermost limits permitted by the U.S. Constitution," this two-step inquiry collapses into one. *See Genesis Bio Pharms., Inc. v. Chiron Corp.*, 27 F. App'x 94, 97 (3d Cir. 2002) (quoting *Charles Gendler & Co. Inc. v. Telecom Equip Corp.*, 102 N.J. 460, 468 (1986)). Thus, the inquiry turns on whether the non-resident had sufficient minimum contacts with the forum such that traditional notions of fair play and substantial justice are not offended by the maintenance of a suit in that forum. *See Metcalfe v. Renaissance Marine, Inc.*, 566 F.3d 324, 334 (3d Cir. 2009) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985)); *O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 316 (3d Cir. 2007) (same).

"Minimum contacts can be analyzed in the context of general jurisdiction or specific jurisdiction." *Id.* General jurisdiction is proper where the defendant has "continuous and systematic contacts with the forum state." *Gen. Elec. Co. v. Deutz AG*, 270 F.3d 144, 150 (3d Cir. 2001). Whereas specific jurisdiction is proper if: "(1) the defendant purposefully directed its

activities at the forum; (2) the litigation arises out of those activities; and (3) whether the exercise of jurisdiction comports with fair play and substantial justice." *Quality Int'l Packaging, Ltd. v. Chamilia Inc.*, 2015 U.S. Dist. LEXI102919, at *7 (D.N.J. Aug. 5, 2015) (citing *O'Connor*, 496 F.3d at 317).

### B.  Federal Rule of Civil Procedure 12(b)(6)

Rule 12(b)(6) permits the dismissal of a case for failure to state a claim.  Fed. R. Civ. P. 12(b)(6).  In reviewing a motion to dismiss for failure to state a claim, the reviewing court accepts all well-pled facts as true, construes the complaint in the plaintiff's favor, and determines "whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (internal quotation marks and citation omitted).  To survive a Rule 12(b)(6) challenge, the plaintiff's claims must be facially plausible, meaning that the well-pled facts "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  The allegations must be "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  Finally, "[i]n deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010).

## III.    ANALYSIS

### A.  Personal Jurisdiction – Federal Rule of Civil Procedure 12(b)(2)

Defendants claim that it is improper for the Court to exercise either general or specific jurisdiction over Aliotta and the Aliotta Entities (collectively, "Aliotta Defendants"). Mot. at 6.[9] ISC concedes that general jurisdiction over the Aliotta Defendants is improper. *See* Opp'n at 7-15 (addressing only propriety of specific jurisdiction).[10]  Instead, ISC responds that specific jurisdiction over the Aliotta Defendants is proper because these Defendants could reasonably anticipate being haled into court in New Jersey. *See id.* at 9.  Alternatively, ISC asserts that it should be afforded the opportunity to conduct limited jurisdictional discovery. *Id.* at 15-16.  The Court will permit limited jurisdictional discovery as to the Aliotta Entities.

### 1.  *The issue of whether the Court may properly exercise specific jurisdiction over Aliotta will be deferred*

Aliotta asserts that the FAC does not allege any claims arising from his contacts with New Jersey, and thus, specific jurisdiction is improper. Mot. at 10.  Specifically, Aliotta claims that the jurisdictional allegations ISC makes against him are insufficient as they relate to personal family reasons for being in New Jersey, *i.e.*, visiting family and renting vacation homes on the Jersey Shore, and business travel in the state that did not give rise to ISC's claims. *Id.* at 10-11.  ISC does not address this claim.  Aliotta adds that any actions he took on behalf of REI in New Jersey cannot serve as a basis for exercising specific jurisdiction against him as an individual.[11] *Id.* at 11-12.

---

[9] Defendants concede that the Court may properly exercise personal jurisdiction over REI. *See* Mot. at 2 ("[T]his Court lacks personal jurisdiction over any Defendant other than [REI].").

[10] ISC does not dispute the Aliotta Defendants' assertion that general jurisdiction is improper. Accordingly, the Court will focus on whether specific jurisdiction may be exercised over the Aliotta Defendants.

[11] What Aliotta refers to, while not explicitly by name, is commonly referred to as the "fiduciary shield doctrine."

ISC responds that Aliotta's actions taken in his corporate capacity, on behalf of REI, subject him to specific jurisdiction because the fiduciary shield doctrine does not protect a corporate official from tort claims.  *See* Opp'n at 11-13.  The Court will defer its decision concerning the exercise of specific jurisdiction over Aliotta until it can determine whether ISC states a plausible claim that Aliotta's actions, on behalf of REI, were tortious in nature.[12]

2. *Limited jurisdictional discovery will be permitted as to the Aliotta Entities to resolve the issue of whether the Court may properly exercise specific jurisdiction*

The Aliotta Entities assert that the FAC's only allegation against them is that they received "certain sums of monies stemming from the fraudulent conduct" of REI and/or Aliotta, but this allegation without any ties to New Jersey cannot serve as the basis for exercising specific jurisdiction over the Aliotta Entities.  *See* Mot. at 8-10.  ISC responds that exercising specific

---

[12] Typically, personal jurisdiction cannot be exercised over an individual whose contacts with the forum state are in his corporate capacity.  *Norben Imp. Corp. v. Metro. Plant & Flower Corp.*, 2005 U.S. Dist. LEXIS 34386, at *13 (D.N.J. Jul. 15, 2005) (citations omitted); *FlagHouse, Inc. v. ProSource Dev., Inc.*, 528 F. App'x 186, 189 (3d Cir. 2013) (emphasizing that "'jurisdiction over an employee does not automatically follow from jurisdiction over the corporation which employs him.'") (quoting *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 781 n.13 (1984)).  This is commonly referred to as the fiduciary shield doctrine.  However, this doctrine has limited reach with respect to tort cases.  *Commence Corp. v. Selltis, LLC*, 2006 U.S. Dist. LEXIS 8833, at *6-7 (D.N.J. Mar. 3, 2006) (citing *In re Royal Dutch/Shell Transport Sec. Litig.*, 380 F. Supp. 2d 509, 550 (D.N.J. 2005)).  Specifically, where "a corporate officer has personally engaged in [tortious] activity for which individual liability may attach, then the corporate shield may not be used to defend against personal jurisdiction."  *Norben*, 2005 U.S. Dist. LEXIS 34386, at *14 (citing *Donner v. Tams-Witmark Music Library*, 480 F. Supp. 1229, 1234 (E.D. Pa. 1979)); *see also Keeton*, 465 U.S. at 781 (rejecting "the suggestion that employees who act in their official capacity are somehow shielded from suit in their individual capacity.") (citing *Calder v. Jones*, 465 U.S. 783, 789 (1984)); *Katzman*, 631 F. Supp. at 557 (quoting *Donner v. Tams-Witmark Music, Library, Inc.*, 40 F. Supp. 1229, 1234 (E.D. Pa. 1979) ("[W]e hold that Aborn's allegedly tortious conduct in his capacity as president…may be considered to determine whether the court has jurisdiction over Aborn as an individual defendant.")); *Par Pharm., Inc. v. QuVa Pharma, Inc.*, 2019 U.S. Dist. LEXIS 13590, at *28-29 (D.N.J. Jan. 11, 2019) (concluding that "where a defendant 'was personally involved in committing various torts…his [] actions would subject him [] to jurisdiction even under the fiduciary shield doctrine.'") (quoting *Schley v. Microsoft Corp.*, 2008 U.S. Dist. LEXIS 96059, at *35 (D.N.J. Nov. 24, 2008)) (brackets omitted).

jurisdiction over the Aliotta Entities is proper because the effects test is met.  Opp'n at 13.  Alternatively, ISC requests that the Court permit limited jurisdictional discovery, given that this type of discovery is favored where the defendant is a corporation.  Opp'n at 15 (citing *Metcalfe*, 566 F.3d at 336).  The Court will permit limited jurisdictional discovery as to the Aliotta Entities.

In order to exercise specific jurisdiction based on the effects test, a plaintiff must demonstrate: "(1) [t]he defendant committed an intentional tort; (2) [t]he plaintiff felt the brunt of the harm in the forum where suit was brought; [and] (3) [t]he defendant aimed his tortious conduct at the forum such that the forum can be said to be the focal point of the tortious activity."  *IMO Indus.*, 155 F.3d at 265-66.  The first prong hinges on whether the plaintiff "has pointed to acts undertaken by [the defendant] which demonstrate that it 'expressly aimed' its tortious conduct at New Jersey."  *Id.* at 266 ("In the typical case, this will require some type of 'entry' into the forum state by the defendant.").  Only if this prong is satisfied does the Court need to consider the second and third prongs.  *See id.*  "[T]he mere allegation that the plaintiff feels the effect of the defendant's tortious conduct in the forum because the plaintiff is located there is insufficient to satisfy [the effects test]."  *Id.* at 263-64.

Here, the connection ISC draws between the Aliotta Entities' alleged fraudulent conduct and New Jersey is far too attenuated to satisfy the first prong of the effects test.  In *Lasala v. Marfin Popular Bank Pub. Co.*, the Court found unavailing the plaintiff's contention that the first prong of the effects test was met because the defendant "knew or should have known" that its tortious actions would have a "direct and substantial effect on the [plaintiff] at its headquarters in New Jersey and on other residents of New Jersey."  2010 U.S. Dist. LEXIS 18450, at *8-9 (D.N.J. Mar. 1, 2010).  Beyond the attenuated connection between the Aliotta Entities and ISC—that the Aliotta Entities received monies from REI/Aliotta which originated from ISC (based in New Jersey)—

10

there is no apparent tie between the Aliotta Entities and New Jersey, *i.e.*, there is no factual allegation that the Aliotta Entities directed their fraudulent conduct at ISC in New Jersey. Thus, ISC has not satisfied the effects test's first prong, and in turn, specific jurisdiction over the Aliotta Entities cannot be exercised based on satisfaction of the effects test. *See id.* at *9 (finding the court lacked specific jurisdiction over the defendant after concluding the first prong of the effects test was not met).

However, in the alternative, ISC requests that the Court permit limited jurisdictional discovery to ascertain whether Aliotta's conduct may be imputed to the Aliotta Entities, *i.e.*, to tie the Aliotta Entities to New Jersey through Aliotta's actions taken on behalf of the Aliotta Entities. Opp'n at 15. The Aliotta Entities contend that there is no need for jurisdictional discovery because ISC has not pled any facts showing a connection to New Jersey and has made no argument that discovery will cure its pleading defects. Reply at 4. The Court will permit limited jurisdictional discovery.

Courts will grant a plaintiff's request for jurisdictional discovery, so long as "the plaintiff presents factual allegations that suggest 'with reasonable particularity' the possible existence of requisite 'contacts between [the defendant] and the forum state.'" *Eurofins Pharma US Holdings v. BioAlliance Pharma SA*, 623 F.3d 147, 157 (3d Cir. 2010) (quoting *Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 455 (3d Cir. 2003)). Moreover, "[j]urisdictional discovery is 'particularly appropriate where the defendant is a corporation.'" *HV Assocs. v. PNC Bank, N.A.*, 2019 U.S. Dist. LEXIS 68705, at *34 (D.N.J. Apr. 18, 2019) (quoting *Metcalfe*, 566 F.3d at 336). But "[a] plaintiff may not [] undertake a fishing expedition based only upon bare allegations, under the guise of jurisdictional discovery." *Id.* (quoting *Eurofins Pharma*, 623 F.3d at 157) (citation omitted).

Here, ISC's allegations against the Aliotta Entities are sufficient, albeit barely, to warrant jurisdictional discovery. *See Qtech Servs., LLC v. Verition Fund Mgmt., LLC*, 2010 U.S. Dist. LEXIS 126499, at *8-9 (D.N.J. Nov. 30, 2010) (granting jurisdictional discovery after finding that the "facts require further development because they are inadequate for this Court to make a disposition as to its exercise of personal jurisdiction over the non-resident [d]efendant."); *see also Metcalfe*, 566 F.3d at 336 (holding that if "the plaintiff's claim is not clearly frivolous, the district court should ordinarily allow discovery on jurisdiction in order to aid the plaintiff in discharging that burden.") (citation omitted). ISC alleges that the Aliotta Entities received a benefit (money) through Aliotta's fraudulent actions directed at New Jersey, and therefore, Aliotta's conduct may be imputed to the Aliotta Entities. Thus, the Court will permit limited jurisdictional discovery aimed at ascertaining whether the Aliotta Entities had minimum contacts with New Jersey either through Aliotta or through some other unspecified contact.

## B. Failure to State a Claim – Federal Rule of Civil Procedure 12(b)(6)

Next, Defendants move to dismiss the FAC's six claims for failure to state a claim. *See* Mot. at 13-37. ISC argues that the FAC meets the necessary pleading standards. *See generally* Opp'n. The Court agrees with Defendants as to certain claims and with ISC as to other claims.

### 1. Count I - Fraud in the Inducement will be dismissed

The FAC alleges a claim for fraud in the inducement. FAC ¶¶ 56-67. In relevant part, ISC alleges: through "repeated course of dealings," ISC and REI reached a "mutual understanding of how the offer prices" for gum products were to be calculated, *id.* ¶ 57; from approximately 2016 through 2021, Aliotta, "in his capacity as director" of REI, submitted numerous offers (via invoices) to ISC, *id.* ¶ 58; REI's offers submitted by Aliotta "knowingly and intentionally misstated the suppliers' prices and/or the commissions which [REI] was to receive on each such

transaction with the intent of fraudulently inducing ISC into accepting the offers," *id.*; REI nor Aliotta never indicated to ISC that the offers submitted "did not conform to the parties' understanding regarding the offer prices or how they were to be calculated," *id.* ¶ 59, nor did they indicate that the offers submitted "included commission ins excess of $50 per MT, *id.* ¶ 60; REI and Aliotta "continued to represent that the offers conformed with the parties['] understanding…." *id.* ¶ 61; ISC would have rejected the submitted offers had they "honestly represented the suppliers' prices and the amount of commissions included in the offers," and not been fraudulently induced into accepting the offers, *id.* ¶¶ 62, 63; ISC reasonably relied on REI's misrepresentations, *id.* ¶ 64; and as a direct and proximate result of the misrepresentations, ISC was damaged, *id.* ¶ 67.  ISC includes that a March 2, 2017 email from Aliotta (on behalf of REI) contains explicit material misrepresentations concerning the suppliers' prices, REI's commissions, and a purported purchase requirement, which ISC reasonably relied on at the time of Aliotta's email.  *Id.* ¶ 65; D.E. 32, Exh. F ("3/2/17 Email").

Defendants raise five arguments in favor of dismissing ISC's claim for failure to plead a viable fraud in the inducement action, which can be reduced to two arguments.  First, ISC's claim does not satisfy the heightened pleading standard for fraud.  Mot. at 16-18; Reply 6-8.  Second, ISC's claim is improperly premised on an "understanding" that could not have been binding on Defendants because it was not mutual and not in writing.  *See* Mot. at 18-21.  And even if the understanding had been mutual, it still could not serve as the basis for a fraud in the inducement claim because fraud-based claims "cannot ordinarily be predicated on unfulfilled promises or statements as to future events."  *Id.* at 21-22 (quoting *PH Chaleyer, Inc. v. Simon*, 91 F. Supp. 5, 7 (D.N.J. 1950)).  With respect to the second argument, ISC broadly responds that Defendants conflate fraud in the inducement with breach of contract, and ISC is not asserting the latter because

its claim is couched in the theory that the "parties' understanding regarding the commissions charged by Defendants was the product of Mr. Aliotta's representations and the repeated dealings of the parties which spanned over a decade." *See* Opp'n at 26.  The Court agrees with Defendants' second argument.

To state a fraud in the inducement claim, a plaintiff must establish: "(1) a material representation of a presently existing or past fact; (2) made with knowledge of its falsity; and (3) with the intention that the other party rely thereof; (4) resulting in reliance by that party; (5) to his detriment."  *RNC Sys. v. Modern Tech. Group, Inc.*, 861 F. Supp. 2d 436, 451 (D.N.J. 2012) (citations omitted).  Such claims must comply with Federal Rule of Civil Procedure 9(b)'s heightened pleading standard as they sound in fraud.  *See G&F Graphic Servs.*, 18 F. Supp. 3d at 593-94 (applying Rule 9(b) to fraud in the inducement claim).  "'To satisfy this standard, the plaintiff must plead or allege the date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation.'"  *Cotopaxi Custom Design & Mfg., LLC v. Chase Bank United States, N.A.*, 2016 U.S. Dist. LEXIS 191895, at *6-7 (D.N.J. Nov. 21, 2016) (quoting *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007)).

Here, ISC's fraud in the inducement claim cannot proceed as pled.  ISC interestingly posits that its fraud in the inducement claim is not "conditioned on the existence[,]" of a contract, but rather that it is based on an "understanding" reached by the parties through their course of dealings. *See* Opp'n at 26 ("[N]owhere in the FAC did ISC indicate that the parties' understanding concerning the offer price was the product of some overarching contract; nor is the viability of Count One [] conditioned on the existence of such a contract.").  However, to prevail on a fraud in the inducement claim, "a party must show that the opposing party 'knowingly omitted material facts in the *execution of the relevant contract*."  *GE Capital Corp. v. Oncology Assocs. of Ocean*

*County, LLC*, 2014 U.S. Dist. LEXIS 134936, at * (D.N.J. Sept. 24, 2014) (emphasis added) (brackets omitted).  Thus, a properly pled allegation requires that a party be fraudulently induced into a contract, which ISC has not done.  Accordingly, the fraud in the inducement claim will be dismissed.

However, this claim will be dismissed without prejudice for a few reasons.  First, aside from ISC's deficient pleading as to the existence of a relevant contract, the FAC includes sufficient details to meet Rule 9(b)'s heightened pleading standard.  Second, the Statute of Frauds would not bar this type of claim solely because ISC has not produced or pled the existence of a writing instrument outlining the parties' contractual obligations; specifically, Defendants are prohibited "from invoking the Statute of Frauds defense if [they have] received and accepted payment[,]" and here, Defendants[13] do not dispute that they received and accepted payment from ISC.  *First Valley Leasing, Inc. v. Goushy*, 795 F. Supp. 693, 696 (D.N.J. 1992) (citing N.J.S.A. § 12A:2-201(3)(c)).  Third, the FAC includes language that may support the existence of a relevant contract for purposes of ISC's fraud in the inducement claim, albeit not a written contract, but potentially an implied contract; for example, as noted above, the FAC alleges that the parties engaged in a "repeated course of dealings," and that ISC and REI reached a "mutual understanding of how the offer prices" for gum products were to be calculated, FAC ¶ 57, which could be evidence of a meeting of the minds (necessary for a contract).  *See Teamsters Indus. Emp. Welfare Fund v. Rolls-Royce Motor Cars, Inc.*, 989 F.2d 132, 137 (3d Cir. 1993) ("The past dealings of contracting parties pursuant to an agreement are probative of the parties' intent. Evidence of a course of conduct is particularly compelling when it occurs over a substantial period of time."); *Available Trade Int'l, LLC v. Tekno Prods., Inc.*, 2021 U.S. Dist. LEXIS 160214, at *7 (D.N.J. Aug. 24, 2021) ("A

---

[13] At least REI and Aliotta (on behalf of REI).

contract exists when there was a meeting of the minds, there was an offer and acceptance, there was consideration, and there was certainty in the terms of the agreement…These elements apply to both express and implied contracts.") (citations omitted).[14]

For the foregoing reasons, the Court will dismiss Count I – Fraud in the Inducement of the FAC without prejudice.

### 2. Count II – Mail/Wire Fraud will be dismissed

The FAC alleges a claim for mail/wire fraud pursuant to 18 U.S.C. §§ 1341, 1343.  FAC ¶¶ 68-70.  As Defendants correctly point out, this claim is improperly brought because there is no private right of action for mail and/or wire fraud claims.  *See Addlespurger v. Corbett*, 461 F. App'x 82, 87 (3d Cir. 2012) ("[T]here is no private cause of action for a violation of the federal mail and wire fraud statutes[.]").

Accordingly, the Court will dismiss Count II – Mail/Wire Fraud of the FAC with prejudice.

### 3. Count III – Unjust Enrichment will be dismissed as to the Aliotta Entities

The FAC alleges a claim for unjust enrichment.  FAC ¶¶ 71-74.  The basis of this claim is that Aliotta and REI were unjustly enriched by the excess in commissions they received from ISC beyond $50 per metric ton, because they received that excess as a result of their fraudulent misrepresentations.  *Id.* ¶ 72.  The Aliotta Entities were also purportedly unjustly enriched through their receipt of those fraudulently obtained funds from Aliotta and/or REI.  *Id.* ¶ 73.  Defendants

---

[14] Defendants' economic loss doctrine is acknowledged, however, it cannot be dispositive at this juncture because ISC has not pled a breach of contract claim, and thus, the analysis of this doctrine would be premature.  Specifically, the economic loss doctrine prohibits recovery in tort of economic losses flowing from a contract, but a fraud in the inducement claim is not barred by this doctrine where the "tortious conduct is extrinsic to the contract between the parties."  *Montclair State Univ. v. Oracle USA, Inc.*, 2012 U.S. Dist. LEXIS 119509, at *14 (D.N.J. Aug. 23, 2012) ("[O]nly those pre-contractual misrepresentations that are extraneous to the parties' contract may be brought alongside a breach of contract claim.") (citations omitted).

raise four arguments, which can be reduced to two arguments.  First, ISC has inadequately pled the elements of an unjust enrichment claim as to any Defendant.  *See* Mot. at 25-27.  Second, an unjust enrichment claim cannot coexist with a breach of contract claim, and at bottom, this claim is "related to a breach of the 'understanding' (*i.e.* a deficiently alleged contract)[.]"  *See id*.  ISC responds to both arguments.  *See* Opp'n at 32-33.  The Court agrees with ISC with respect to Aliotta and REI, but disagrees with respect to the Aliotta Entities.

To state a claim for unjust enrichment, a plaintiff must "show both that [the] defendant received a benefit and that retention of that benefit without payment would be unjust."  *Tracy v. FileNet Corp.*, 2007 U.S. Dist. LEXIS 94754, at *28 (D.N.J. Dec. 28, 2007) (quoting *VRG Corp. v. GKN Realty Corp.*, 135 N.J. 539, 554 (N.J. 1994)).  "Recovery under a theory of unjust enrichment is not appropriate, however, when a valid, unrescinded contract governs the rights of the parties."  *Id.* (citations omitted).

Here, contrary to Defendants' assertion[15] that ISC has inadequately pled its unjust enrichment claim, *see* Mot. at 25-27, ISC has sufficiently pled an unjust enrichment claim as to, at least, Aliotta and REI.  In accepting the well-pled factual allegations as true, ISC's payments to Aliotta and REI in excess of the purported understanding that commissions would not exceed $50 per metric ton and Aliotta and REI's noncompliance with that understanding may have unjustly enriched Aliotta and REI.  *See Colonial Sur. Co. v. Alpha Software Corp.*, 2019 U.S. Dist. LEXIS 82748, at *9 (D.N.J. May 16, 2019) (explaining that the plaintiff's payment to the defendant in

---

[15] Although separated by element and by Defendant in Defendants' moving brief.  *See* Mot. at 25-27.

excess of contract price may have unjustly enriched the defendant). Thus, the unjust enrichment claim against Aliotta and REI will not be dismissed.[16]

However, as to the Aliotta Entities, ISC has not adequately pled an unjust enrichment claim. Specifically, an unjust enrichment claim "requires that a plaintiff have conferred a *direct benefit* on the defendant." *Dzielak v. Whirlpool Corp.*, 120 F. Supp. 3d 409, 424-25 (D.N.J. 2015) (finding that because "the plaintiffs purchased their appliances from the retailer-defendants, not from Whirlpool, they did not confer a sufficiently direct benefit on Whirlpool[,]" and as such the unjust enrichment claim could not proceed against Whirlpool). As pled, any benefit conferred upon the Aliotta Entities is indirect, because ISC conducted business with Aliotta and REI, not with the Aliotta Entities. Thus, the unjust enrichment claim against the Aliotta Entities will be dismissed.[17]

Accordingly, the Court will dismiss without prejudice Count III – Unjust Enrichment of the FAC only as to the Aliotta Entities. *See id.* (noting that dismissal of the unjust enrichment claim was previously made without prejudice as to the defendant upon whom a direct benefit was not pled).

---

[16] Defendants' argument that ISC's unjust enrichment claim is improper because it cannot be brought alongside a breach of contract claim is without merit. ISC has not pled a breach of contract claim. *See generally* FAC.

[17] Defendants' assertion that ISC's unjust enrichment claim cannot lie because this type of claim cannot lie alongside a breach of contract claim is acknowledged, however, this argument is not dispositive, because the FAC does not contain a breach of contract claim.

### 4. *Count IV – Breach of Duty of Loyalty will not be dismissed*

The FAC alleges a claim for breach of duty of loyalty as to Aliotta.[18]  FAC ¶¶ 75-79.  ISC specifically alleges: Aliotta, in his capacity as director of ISC Europe,[19] owed both ISC Europe and ISC "an undivided duty of loyalty and could not, while serving in that capacity, act contrary to their interests," *id.* ¶ 77; and by "defrauding ISC and engaging in other conduct designed to benefit [Defendants], at the expense of ISC, Mr. Aliotta breached his duty of loyalty to ISC," *id.* ¶ 78.  Aliotta asserts that ISC cannot establish that a duty of loyalty was owed nor that such a duty was breached.  *See* Mot. at 27-34.  ISC responds that it has adequately pled the elements of a breach of duty of loyalty claim.  *See* Opp'n at 33-36.  The Court agrees with ISC.

To state a claim for breach of a fiduciary duty, such as a duty of loyalty, a plaintiff must demonstrate: "(1) a fiduciary duty existed between [the plaintiff and the defendant;] (2) the defendant breached that duty[;] and (3) damages as a result of the breach."  *Rapaport v. Robin S. Weingast & Assocs.*, 859 F. Supp. 2d 706, 717 (D.N.J. 2012) (citations omitted).  Because "it is well established that a fiduciary's duties are not limitless, but are circumscribed by the parameters of the fiduciary relationship[,]" a plaintiff "must allege a duty that arises within the scope of the fiduciary relationship and that [the defendant] breached that particular duty."  *Id.* at 717-18.

A duty of loyalty runs between a wholly owned subsidiary's directors and the parent because "in a parent and wholly-owned subsidiary context, the directors of the subsidiary are obligated only to manage the affairs of the subsidiary in the best interests of the parent and its

---

[18] Defendants' motion asserts that the FAC does not support a breach of duty of loyalty claim against REI and the Aliotta Entities because there is no relationship between ISC and these parties. Mot. at 28.  However, the allegations pled in the FAC as to this claim appear to only allege that Aliotta breached his duty of loyalty, not the other Defendants.  *See* FAC ¶¶ 75-79.  Additionally, ISC does not dispute that there is no such claim against REI and the Aliotta Entities in its opposition brief.  *See generally* Opp'n.  Thus, the Court treats the claim as pled only as to Aliotta.
[19] ISC's wholly-owned subsidiary.  FAC ¶ 76.

shareholders." *In re Teleglobe Communs. Corp.*, 493 F.3d 345, 366-67 (3d Cir. 2007) (citation

omitted); *see id.* at 367 ("[T]he only interest of a wholly owned subsidiary is serving its parent.")

(citation omitted); *VFB LLC v. Campbell Soup Co.*, 482 F.3d 624, 635 (3d Cir. 2007) ("Directors

must act in the best interests of a corporation's shareholders, but a wholly-owned subsidiary has

only one shareholder: the parent. There is only one substantive interest to be protected, and hence

'no divided loyalty' of the subsidiary's directors[.]").

"Fiduciaries breach their duty of loyalty by intentionally failing to act in the face of a

known duty to act, demonstrating a conscious disregard for their duties." *In re Teleservices Group,

Inc.*, 2009 U.S. Dist. LEXIS 110200, at *20 (D.N.J. Nov. 24, 2009) (citations omitted).  Moreover,

this duty requires that "the best interests of the corporation and its shareholders take precedence

over any self-interest of a director…that is not shared by the stockholders generally." *Id.* (citation

omitted).

> The threshold inquiry in assessing whether a director violated his duty of
> loyalty is whether the director has a conflicting interest in the transaction.
> Directors are considered interested if they either appear on both sides of a
> transaction [] or expect to derive any personal financial benefit from it in
> the sense of self-dealing, as opposed to a benefit which devolves upon the
> corporation or all stockholders generally.

*Id.* at *20-21 (quoting *In re Seidman*, 37 F.3d 911, 934 (3d Cir. 1994))

Here, ISC has sufficiently pled the first element of a breach of duty of loyalty claim as to

Aliotta.  As director of ISC's wholly-owned subsidiary, ISC Europe, Aliotta owed a duty of loyalty

to the parent, ISC.  *See VFB LLC v. Campbell Soup Co.*, 482 F.3d at 635 (explaining that a wholly-

owned subsidiary's directors must act in the best interests of the parent due to the fiduciary duties

they owe to the parent).  Thus, Aliotta's assertion that ISC's pleading is deficient because there is

"no relationship between Aliotta and ISC (U.S.) such that Mr. Aliotta has a fiduciary obligation to

ISC[,]" Mot. at 28, is flawed.  Specifically, Aliotta ignores that he owed fiduciary duties to ISC by

virtue of being a director of ISC's wholly-owned subsidiary.  Aliotta's argument that he had "the *opposite* of a relationship in which a fiduciary duty would arise," Mot. at 29, because that would mean he was on both sides of the relevant transactions,[20] is also unavailing.  Specifically, the fact that Aliotta may have been on both sides of the transactions between the parties goes to the heart of a breach of duty of loyalty claim: whether a director violated his duty of loyalty by "appear[ing] on both sides of a transaction" or "expect[ing] to derive any personal financial benefit from [the transaction] in the sense of self-dealing[.]"  *In re Teleservices Group*, 2009 U.S. Dist. LEXIS 110200, at *20-21 (quoting *In re Seidman*, 37 F.3d at 934).  Therefore, the first element of a breach of loyalty claim has been properly pled as to Aliotta.

ISC has also sufficiently pled the second element of its claim.  Specifically, ISC alleges that Aliotta breached his duty of loyalty to ISC by holding his (and REI's) personal financial interest above that of ISC.  Whatever the merits of ISC's claim ISC's allegations are sufficient at this juncture. *See Torres v. Borough of Barrington*, 2017 U.S. Dist. LEXIS 117710, at *3-4 (D.N.J. Jul. 27, 2017) ("[I]n weighing a motion to dismiss, [a district court] asks 'not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claim.'") (citations and quotation marks omitted).  If ISC is able to establish that Aliotta favored his (and REI's) personal financial interest above ISC in receiving excess commissions and overcompensation in transactions between REI and ISC, then ISC may be able to demonstrate a breach of Aliotta's duty of loyalty.  Therefore, the second element of a breach of loyalty claim has been properly pled as to Aliotta.

---

[20] Aliotta may have been on both sides of the relevant transactions because he was the owner of REI, who was transacting with ISC.

Additionally, Aliotta contends that any fiduciary duties Aliotta owed are governed by UK law because ISC Europe is incorporated in the UK, and thus, this claim should be dismissed as pled. *See* Mot. at 29-31.  However, this District recognizes that "'it can be inappropriate or impossible for a court to conduct [a choice of law] analysis at the motion to dismiss stage when little or no discovery has taken place.'"  *Powell v. Subaru of Am., Inc.*, 502 F. Supp. 3d 856, 875 (D.N.J. 2020) (quoting *Snyder v. Farnam Cos.*, 792 F. Supp. 2d 712, 717 (D.N.J. 2011)) (citation omitted).  Thus, the Court will defer the choice of law analysis at this juncture.

Accordingly, the Court will not dismiss Count IV – Breach of the Duty of Loyalty of the FAC to the extent that it is only pled against Aliotta.[21]

5. *Count V – Conversion will be dismissed*

The FAC alleges a claim for conversion.  FAC ¶¶ 80-86.  The alleged conversion is of money, specifically: "any funds which exceeded the suppliers' prices plus a commission of no more than $50 per MT [metric ton]."  *Id.* ¶ 81.  Defendants raise two arguments in favor of dismissing this claim.  First, ISC has not adequately pled that the allegedly converted money is "identifiable."  Mot. at 34-35.  Second, ISC has not pled that Defendants' possession of any money was "without authorization."  *Id.* at 35.  ISC responds only to Defendants' first argument.  Specifically, ISC asserts that it is not required, at this stage, to plead the exact sums that each Defendant converted for the converted money to be "identifiable."  *See* Opp'n at 36-38.  The Court agrees with Defendants' second argument.

To maintain a claim for the conversion of money, a "plaintiff must 'establish that the tortfeasor exercised dominion over its money and repudiated the superior rights of the owner' and

---

[21] Aliotta does not dispute whether ISC has properly pled the damages element, and thus, the Court is satisfied that ISC has sufficiently pled this element.

such 'repudiation must be manifested in the injured party's demand for funds and the tortfeasor's refusal to return the monies sought.'" *Vita v. Vita*, 2022 U.S. Dist. LEXIS 22208, at *10 n.2 (D.N.J. Feb. 8, 2022) (quoting *Bondi v. Citigroup, Inc.*, 423 N.J. Super. 377, 432 (App. Div. 2011)); *see also First Am. Title Ins. Co. v. Sadek*, 2017 U.S. Dist. LEXIS 213345, at *13 (D.N.J. Dec. 29, 2017) (explaining that a conversion claim has "three essential elements: (1) wrongful exercise of dominion or control over the property of another; (2) the taking of property without authorization; and (3) that the taking was to the exclusion of the owner's rights to that property.") (citations omitted).

Where the basis of the conversion claim is money, that money must be "identifiable as plaintiff's property or that the defendant was obligated to segregate such money for the plaintiff's benefit." *SalandStacy Corp. v. Freeney*, 2012 U.S. Dist. LEXIS 37141, at *25 (D.N.J. Mar. 21, 2012) (citations omitted). However, "the money need not be the identical bills or coins that belong to the [plaintiff]." *Chicago Title Ins. Co. v. Ellis*, 409 N.J. Super. 444, 455-56 (App. Div. 2009).

Moreover, "[c]onversion is an 'intentional tort' in that 'the defendant must have intended to exercise a dominion or control over the goods which is in fact inconsistent with the plaintiff's rights.'" *Sadek*, 2017 U.S. Dist. LEXIS 211345, at *13 (quoting *Ellis*, 409 N.J. Super. at 454) (citation omitted). However, the intent element for conversion requires a lower standard than that for fraud because "the defendant need not 'knowingly or intentionally act wrongfully for a conversion to occur.'" *Id.* (quoting *Ellis*, 409 N.J. Super. at 454) (citations omitted); *see id.* ("The defendant need not intend to harm the proper owner of the property or even know that the property belonged to that other person.") (citing *Ellis*, 409 N.J. Super. at 456); *Meisels v. Fox Rothschild LLP*, 240 N.J. 286, 304 (N.J. 2020) ("A defendant may be liable for conversion even when 'he acted in good faith and in ignorance of the rights or title of the owner.'") (citations omitted).

23

Here, Defendants' are incorrect that the allegedly converted monies are unidentifiable, as they consist of the excess funds[22] that Defendants purportedly "procured as a product of fraud and the subsequent transfer of those funds to the Aliotta Entities…" *See* FAC ¶¶ 81, 83; *see also Ellis*, 409 N.J. Super. at 460 (finding that the plaintiff had properly identified funds belonging to it where those funds were "fraudulently obtained loan proceeds."); *Asta Funding, Inc. v. Your Wellbeing, LLC*, 2014 U.S. Dist. LEXIS 107138, at *22 (D.N.J. Aug. 5, 2014) (denying summary judgment to the defendants on conversion claim where the identifiable money was that which the defendants purportedly "obtained…through fraud."); Restatement 2d of Torts, § 221(b).   Thus, ISC has sufficiently pointed to "identifiable" money.

However, Defendants' second argument correctly points out that ISC has failed to plead that Defendants exercised dominion or control over ISC's money without authorization. Conversion requires the "intentional exercise of dominion and control over chattel that seriously interferes with the right of another to control that chattel." *Meisels*, 240 N.J. at 305.   But "where the defendant lawfully acquired [the] plaintiff's property, the plaintiff must show that he demanded the return of the property and that the defendant refused compliance." *Id.* (citations omitted).   This demand is necessary because "[w]here possession is initially lawful, it is not tortious unless and until the [defendant in possession] acts in a way that conflicts with the [plaintiff's ownership] rights." *Id.* (citation omitted).   Therefore, when the plaintiff demands the "return of the property and the [defendant] refuses, then a conversion has occurred[,]" because a conflict with the plaintiff's ownership rights occurs.  *See id.*   Because ISC has failed to plead that it demanded the allegedly converted monies back from Defendants and that Defendants refused to comply with

---

[22] The excess funds consist of "any funds which exceeded the suppliers' prices plus a commission of no more than $50 per MT."  FAC ¶ 81.

that demand, it follows that ISC has insufficiently alleged that Defendants exercised dominion or control over ISC's money without authorization. *See* FAC ¶¶ 80-86 (omitting any mention of demand made to Defendants that allegedly converted monies be returned).

Accordingly, the Court will dismiss Count V – Conversion of the FAC without prejudice.

### 6. *Count VI – Civil Conspiracy will be dismissed*

The FAC alleges a claim for civil conspiracy. FAC ¶¶ 87-89. The basis of this claim is that "Aliotta, together with REI, [and] the Aliotta Entities…conspired and formed an agreement with a common purpose of defrauding ISC out of funds to which Defendants are not entitled," and that as a result, "ISC was damaged." *Id.* ¶¶ 88-89. Defendants contend that these allegations set forth nothing more than conclusory statements of law, and therefore, the civil conspiracy claim must be dismissed. Mot. at 36. Defendants also argue that ISC's claim ignores the requirement that a conspiracy be between "two or more persons," because it endorses the theory that a civil conspiracy exists in every case involving "a closely held company and its owner (since that owner would automatically have agreed with itself as to all relevant actions)." *Id.* at 36-37. ISC responds that it agrees that Aliotta, REI, and the Aliotta Entities should be viewed as a "one-in-the-same," but if the Court agrees, then the same reasoning should apply for purposes of personal jurisdiction. Opp'n at 38-39. The Court agrees with Defendants that ISC's pleading is inadequate.

To state a claim for civil conspiracy, a plaintiff must demonstrate a "combination of two or more persons acting in concert to commit an unlawful act, or to commit a lawful act by unlawful means, the principal element of which is an agreement between the parties to inflict a wrong against or an injury upon another, and an overt act that results in damage." *Amgro, Inc. v. Lincoln General Ins. Co.*, 361 F. App'x 338, 347 n.11 (3d Cir. 2010) (quoting *LoBiondo v. Schwartz*, 199 N.J. 62, 102 (N.J. 2009)). However, "a plaintiff need not prove that the unlawful agreement was

express or that each participant in the conspiracy knew the 'exact limits of the illegal plan or the identity of all participants,' as long as [the] plaintiff alleges that each participant shared in 'the general conspiratorial objective.'" *World Express & Connection, Inc. v. Crocus Invs., LLC*, 2020 U.S. Dist. LEXIS 15625, at *56 (D.N.J. Aug. 28, 2020) (quoting *Morgan v. Union County Bd. of Chosen Freeholders*, 268 N.J. Super. 337, 365 (App. Div. 1993)).

Furthermore, because a civil conspiracy claim is "essentially a tort action[,]" then "a plaintiff must also point to[:] (1) an overt act of one or more of the conspirators in furtherance of the conspiracy; and (2) consequential damage to the rights of another, of which the overt act is the proximate cause." *Id.* (citing *Board of Ed. Of the City of Asbury Park v. Hoek*, 66 N.J. Super. 231, 241 (App. Div. 1961), *rev'd in part on other grounds*, 38 N.J. 213 (1962)). What makes a civil conspiracy actionable is "the tort which the defendants agreed to perpetuate and which they actually committed." *Id.* at *56-57 (citing *Landriani v. Lake Mohawk Country Club*, 26 N.J. Super. 157, 159 (App. Div. 1953)). Therefore, a civil conspiracy claim cannot survive without a viable underlying tort.

Another necessary consideration where corporate entities are involved is the "intracorporate conspiracy doctrine," which provides that a corporation cannot conspire with its employees or agents because they are considered a single entity. *Id.* at *57 (citing *Heffernan v. Hunter*, 189 F.3d 405, 412 n.5 (3d Cir. 1999) (citation omitted). Similarly, "individual agents, officers, or employees of a corporation, acting in their representative capacities cannot conspire among themselves." *Id.* at *58 (citing *Marjac, LLC v. Trenk*, 2006 U.S. Dist. LEXIS 91574, at *52 (D.N.J. Dec. 19, 2006)) (citations omitted); *see also IDT Corp. v. Unlimited Recharge, Inc.*, 2012 U.S. Dist. LEXIS 130815, at *44-45 (D.N.J. Sept. 13, 2012) (emphasizing the intracorporate conspiracy doctrine "applies if an employee participates in the conspiracy in the course and scope

of employment.") (citation omitted).   However, where agents, officers, or employees of a corporation are acting as *individuals*, rather than as representative of the corporation, a civil conspiracy claim may lie. *Id.* (citing *Marjac*, 2006 U.S. Dist. LEXIS 91574, at *52).

Here, as pled, the two or more persons who conspired to defraud ISC are "Aliotta, REI, [and] the Aliotta Entities[,]" FAC ¶ 88, but Aliotta is the also pled to be the sole director and/or owner of REI and the Aliotta Entities,[23] FAC ¶¶ 3-9.  Thus, the intracorporate conspiracy doctrine bars ISC's civil conspiracy claim to the extent that the conspiracy is alleged to be between Aliotta and REI and/or between Aliotta and the Aliotta Entities because they are a single entity.  This is true unless Aliotta was acting beyond the scope of his employment when engaging in the purported conspiracy, which is not pled.  Accordingly, the FAC does not adequately plead a civil conspiracy between Aliotta and REI and/or between Aliotta Entities.

Next, because the intracorporate conspiracy doctrine does not bar claims alleging an intercorporate conspiracy, *i.e.*, between REI and the Aliotta Entities, determining whether ISC's civil conspiracy claim may lie on this basis requires separate treatment.  Whether it was possible for REI and the Aliotta Entities to conspire with each other is a determination that cannot be made at this juncture because the FAC does not provide any basis to believe that REI and the Aliotta Entities were sufficiently independent of each other, such that they could come to an agreement to defraud ISC.  *See Coast Cities Truck Sales v. Navistar Int'l Transp. Co.*, 912 F. Supp. 747, 764 (D.N.J. 1995) ("To be capable of conspiring, corporate entities must be 'sufficiently independent of each other.' Whether corporate entities are sufficiently independent requires an examination of the particular facts of each case…The evidence cited by the district court clearly demonstrates that [the franchisor and franchisee] comprise a common enterprise.'") (citations omitted).

---

[23] With the exception of RE Agriculture Limited.  *See* Supra n.3.

Additionally, ISC fails to plead the role each of the Defendants had in the alleged conspiracy, as well as what the actual agreement consisted of and how the agreement was made. *See IDT Corp.*, 2012 U.S. Dist. LEXIS 130815, at *45-46 (dismissing civil conspiracy claim as "simply too vague" where the plaintiffs did "not make explicitly clear what the actual agreement consisted of, or how the agreement was made [between the defendants]."); *Four Seasons at N. Caldwell Condo. Ass'n v. Hovnanian*, 2019 N.J. Super. Unpub. LEXIS 3492, at *21 n.7 (App. Div. May 28, 2019) (dismissing civil conspiracy claim due to the plaintiff's failure to "sufficiently allege the role each of the [defendants] had in the alleged conspiracy. Without meaningful differentiation among these entities, the Court cannot discern a basis for a claim of civil conspiracy against each of them."). Therefore, ISC's civil conspiracy claim must be dismissed for failure to state a claim.

Accordingly, the Court will dismiss Count VI – Civil Conspiracy of the FAC without prejudice.

### C. Defendants' Request to Strike/Dismiss ISC's Request for Punitive Damages and Attorney's Fees Will Be Deferred

Finally, Defendants request that ISC's demands for punitive damages and attorney's fees be stricken and/or dismissed from the FAC. Mot. at 37-38. Specifically, Defendants assert that ISC has not pled that Defendants' actions were motivated by actual malice or wanton and willful disregard nor any basis for attorney's fees. However, because the Court will permit ISC to file a Second Amended Complaint, the Court will defer its decision on Defendants' request concerning punitive damages and attorney's fees.

### D. ISC Will Have an Opportunity to Amend the FAC

Although ISC has not sought leave to amend the FAC, Federal Rule of Civil Procedure 15(a)(2) provides that leave to amend should be freely given "when justice so requires." "[I]nadequate complaints should be dismissed without granting leave to amend only if the

amendment would be inequitable or futile." *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 106 (3d Cir. 2002). "'Futility' means that the complaint, as amended, would fail to state a claim upon which relief could be granted." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1140, 1434 (3d Cir. 1997). Amendment would be futile "if the amended complaint would fail to state a claim for relief under Rule 12(b)(6)." *Klotz v. Celentano Stadtmauer & Walentowicz LLP*, 991 F.3d 458, 462 (3d Cir. 2001). Accordingly, the Court will grant dismissal of ISC's claims without prejudice, except to the extent noted in the preceding sections.

## IV.    CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss will be **GRANTED *in part* and DENIED *in part***.  Limited jurisdictional discovery will be permitted on an expedited basis as to the Aliotta Entities.  Count I – Fraud in the Inducement, Count V – Conversion, and Count VI – Civil Conspiracy will be dismissed without prejudice.  Count II – Mail/Wire Fraud will be dismissed with prejudice.  Count III – Unjust Enrichment will be dismissed without prejudice as to the Aliotta Entities.  ISC will have thirty (30) days to file a Second Amended Complaint.  An appropriate Order accompanies this Opinion.

Dated: April 28, 2023

Evelyn Padin, U.S.D.J.