**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| IMPORTERS SERVICE CORPORATION, | |
| Plaintiff, | |
| v. | No. 22cv4640 (EP) (JBC) |
| MARIO ALIOTTA, *et al.*, | OPINION |
| Defendants, | |
| v. | |
| MATTHEW BERLINER, ERIC BERLINER, | |
| Third-Party Defendants. | |

**PADIN, District Judge.**

Defendant-Counterclaimant RE International ("REI") brings counterclaims against Plaintiff-Counterclaim Defendant Importers Service Corporation ("ISC") and a third-party complaint against Third-Party Defendants Matthew Berliner and Eric Berliner ("Matthew and Eric Berliner").[1] The action concerns the business relationship between REI, ISC, and Matthew and Eric Berliner—more specifically ISC's purchases of raw gum from international suppliers through REI. *See* ACTPC.

ISC and Matthew and Eric Berliner move to dismiss Counts IV through VI of the ACTPC: REI's tortious interference, fraud in the inducement, and civil conspiracy counterclaims and third-

---

[1] While REI's Counterclaim and Third-Party Complaint, D.E. 71, also brought claims against Christopher Berliner, REI's Amended Counterclaim and Third-Party Complaint, D.E. 87 (the "ACTPC") no longer lists Christopher Berliner as a Third-Party Defendant. *See also* D.E. 92.  For the avoidance of doubt, REI's third-party claims against Christopher Berliner are hereby dismissed.

party claims.[2]  *See* D.E. 91-1 (the "Motion" or "Mot.").[3]  REI opposes.  D.E. 98 ("Opposition" or "Opp.").  ISC and Matthew and Eric Berliner reply.  D.E. 99 ("Reply").  The Court decides the Motion without oral argument.  *See* Fed. R. Civ. P. 78(b); L. Civ. R. 78.1(b).  For the reasons set forth herein, ISC and Matthew and Eric Berliner's Motion will be **GRANTED**.

I.     **BACKGROUND**

   A.     **Factual Background**[4]

ISC imports into the United States consignments of raw gum acacia from suppliers principally in Africa through deals brokered, in some instances, by REI.  ACTPC ¶ 9.  Matthew and Eric Berliner partially or wholly own ISC.  *Id* ¶ 3.  On March 1, 2019, ISC submitted Purchase Orders 3 ("PO 3") and 4 ("PO 4") to REI for a total of 5,000 tons of raw gum.  *Id.* ¶ 17.  PO 3 and PO 4 modified orders entered in 2016 and provided ISC with lower prices for the raw gum while requiring that ISC purchase more of it.  *Id.* ¶¶ 12–18.  Both purchase orders constituted binding contracts, and ISC and REI had agreed in a prior contract to observe "the norms of non-circumvention and no disclosure of the Chambers of Trade of London" (the "ISC-REI Non-

---

[2] Matthew and Eric Berliner also move to dismiss Counts I through III of the ACTPC brought against them.  *See* Mot. at 10–11.  Matthew and Eric Berliner explain that, while REI has captioned Counts I through III as being "against ISC"—and not Matthew and Eric Berliner, Matthew and Eric Berliner are included in the prayers for relief for each of those counts.  *Id.*  REI explains in Opposition that it has not brought Counts I through III against Matthew and Eric Berliner and that any reference to Matthew and Eric Berliner in the prayers for relief for those counts was in error.  Opp. at 3.  To the extent the ACTPC pleads Counts I through III against Matthew and Eric Berliner, the Court will dismiss Counts I through III as brought against Matthew and Eric Berliner.

[3] For ease of reference, the Court refers to ISC and Matthew and Eric Berliner's brief in support of their Motion, D.E. 91-2.  As explained *infra* Section I.B, ISC and Mathew and Eric Berliner submitted a revised Notice of Motion at D.E. 92-1 and a revised proposed order at D.E. 92-2.  D.E. 92.

[4] The facts in this section (and throughout this Opinion) are taken from the well-pled factual allegations in the ACTPC, which the Court presumes to be true for purposes of resolving the Motion.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

2

Disclosure Agreement"). *Id.* ¶¶ 18, 76. REI had similar confidentiality and non-disclosure agreements with some of its suppliers, including Norris International Trading Co. Ltd. ("Norris"). *Id.* ¶ 77. PO 3 and PO 4 each set forth a specific schedule on which the suppliers were to ship gum to ISC, and the "schedule was a material term in [PO 3 and PO 4] given RE[I]'s need to source the material from suppliers on another continent." *Id.* ¶ 19.

In July or August 2019, Matthew Berliner—acting on ISC's behalf—instructed REI to halt shipments of PO 3 scheduled to arrive in the fall of 2019, claiming that ISC could not absorb the shipments as scheduled. *Id.* ¶¶ 20–21. REI accordingly agreed to modify PO 3 to halt the shipments in exchange for ISC agreeing to purchase an additional 800 tons of raw gum, which increased the contract value for PO 3 to $8,950,976.00. *Id.* ¶ 22. As of the date of the ACTPC, only 1,760 tons of raw gum had been delivered to ISC under PO 3, leaving a balance of 2,040 tons of raw gum and $4,805,260.80 outstanding for PO 3. *Id.* ¶ 44.

Matthew Berliner made the request to halt PO 3's shipments "to buy ISC time to shop for an alternate, cheaper supply" of raw gum. *Id.* ¶ 24. Ultimately, on May 28, 2020, and November 25, 2020, ISC entered purchase orders with REI's competitors for the same product ISC had contracted in PO 3 to purchase through REI. *Id.* ¶¶ 26–27.

1. *Interactions with supplier Morouj*

Matthew Berliner's request that REI halt shipments of PO 3 caused REI, in turn, to request that REI's supplier Morouj Commodities UK Ltd ("Morouj") halt or alter the timing of the shipments. *Id.* ¶ 29. Morouj refused to do so and, instead, repudiated its contract with REI by demanding a price increase of over $1 million. *Id.* ¶ 30. REI was thus forced to terminate its agreements with Morouj (the "REI-Morouj Agreements") in or around August 2019. *Id.* ¶ 31. As such, when ISC requested on or about October 22, 2019, that REI ship 300 tons of gum from the modified PO 3 contract earlier than scheduled, REI sought out an alternative supplier that charged

3

REI approximately $100,000 more than what REI would have paid to Morouj. *Id.* ¶¶ 32–35. After REI did so, Matthew Berliner informed REI in December 2019 that ISC no longer needed the shipment from PO 3 that ISC had requested in October 2019. *Id.* ¶ 38. REI's termination of the REI-Mouraj Agreements also resulted in litigation, in which a court in the United Kingdom entered a judgment against REI in 2022 for $630,000, as well as interest and costs. *Id.* ¶¶ 31, 49–51. This judgment (along with approximately $250,000 of associated legal fees) was a direct result of ISC's breach of contract. *Id.* ¶¶ 51–53.

In violation of the ISC-REI Non-Disclosure Agreement, ISC also communicated directly with Morouj after Morouj sought payment for the repudiated contract. *Id.* ¶¶ 36–37, 47. In those conversations, Morouj disclosed REI's confidential business information (including its purchase prices) to ISC. *Id.* ¶ 37.

    2.    *Interactions with supplier Norris*

ISC also communicated directly with another supplier, Norris, in September or October 2021 to try to circumvent using REI as an intermediary. *Id.* ¶ 82. This direct communication between ISC and Norris violated both (1) the ISC-REI Non-Disclosure Agreement and (2) a confidentiality and non-disclosure agreement REI had entered with Norris (the "REI-Norris Non-Disclosure Agreement"). *Id.* ¶¶ 76–88.

REI nevertheless continued shipping raw gum provided by Norris to ISC, including a 100-ton shipment to ISC in or about July 2022; however, in breach of PO 3 and/or PO 4, ISC did not pay the contracted amount to REI. *Id.* ¶¶ 89–91. Instead, ISC worked with Norris and UM Algura Gums and Garda General Trading ("UM Algura") to circumvent REI and wired Norris's fee directly to Norris through Anthony Nwachukwu of Atlantic Gums, Inc. ("Atlantic Gums")—an American company with which ISC had an existing relationship and used as an intermediary for

4

this payment. *Id.* ¶¶ 87, 92. ISC then only paid REI $7,000, rather than the contractually agreed upon $25,552. *Id.* ¶ 93.

B.   **Procedural Background**

ISC filed its initial complaint against Defendants Mario Aliotta, REI, and Aliotta Holdings Limited on July 19, 2022. D.E. 1. Following multiple amended complaints and motions to dismiss,[5] ISC filed its Fourth Amended Complaint against REI and Aliotta on June 6, 2024, alleging fraudulent inducement, unjust enrichment, breach of the duty of loyalty, and conversion. D.E. 66.

On July 19, 2024, REI filed a counterclaim against ISC and third-party complaint against Matthew Berliner, Eric Berliner, and Christopher Berliner. D.E. 71. Together, ISC and the three Third-Party Defendants filed a motion to dismiss on August 8, 2024. D.E. 73. The Court administratively terminated that motion to dismiss for failure to comply with this Court's requirement that parties file letters with the Court prior to filing motions to dismiss. D.E. 74. After the parties filed those letters, the Court held a pre-motion conference on September 3, 2024, during which REI agreed to submit an amended counterclaim and third-party complaint. D.E. 80.

Defendant filed the ACTPC on November 1, 2024. D.E. 87. In the ACTPC, REI brings counterclaims against ISC for breach of contract for "cessation of shipments" (Count I), breach of contract for "contacts with Norris" (Count II), and breach of the covenant of good faith and fair dealing (Count III). *Id.*[6] REI also brings claims against ISC and Matthew and Eric Berliner for

---

[5] For a more detailed history of the procedural history of ISC's claims, *see* D.E. 63.

[6] As explained *supra* n.2, to the extent the ACTPC pleads Counts I through III against the Matthew and Eric Berliner, the Court will dismiss Counts I through III as brought against them.

5

tortious interference (Count IV), fraud in the inducement (Count V), and civil conspiracy (Count VI). *Id.*

On December 27, 2024, ISC and Matthew and Eric Berliner moved to dismiss Counts IV through VI of the ACTPC. D.E. 91. That same day, ISC and Matthew and Eric Berliner filed a letter explaining that they understood that REI had voluntarily dismissed its third-party complaint against Christopher Berliner, D.E. 92, and filed a revised Notice of Motion at D.E. 92-1 and revised proposed order at D.E. 92-2. ISC and Matthew and Eric Berliner did not submit a revised brief. *See* Dkt. The Court therefore treats D.E. 91-2 as the operative moving brief and, for ease of reference, refers to D.E. 91-2 as ISC and Matthew and Eric Berliner's Motion. REI opposed the Motion. Opp. ISC and Matthew and Eric Berliner replied. Reply.

## II.   LEGAL STANDARD

Rule 12(b)(6) permits the dismissal of a case for failure to state a claim. In reviewing a 12(b)(6) motion, the reviewing court accepts all well-pled facts as true, construes the complaint in the complainant's favor, and determines "whether, under any reasonable reading of the complaint, the [complainant] may be entitled to relief." *Phillips v. Cnty of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (quoting *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)). To survive a 12(b)(6) challenge, the claims must be facially plausible, meaning that the well-pled facts must "allow[] the court to draw the reasonable inference that the defendant [or counter-claim defendant or third-party defendant] is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. The allegations must be "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell At. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

"In deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents

6

if the complainant's claims are based upon these documents." *Mayer v. Belichik*, 605 F.3d 223, 230 (3d Cir. 2010).

## III. DISCUSSION[7]

### A. Count IV (Tortious Interference) Will Be Dismissed

REI's tortious interference claims stem from four alleged actions it attributes to ISC and Matthew and Eric Berliner: (1) interfering with the ISC-REI Non-Disclosure Agreement[8] by communicating directly with Morouj, ACTPC ¶¶ 36–37; (2) interfering with the REI-Morouj Agreements by representing that ISC needed to halt gum shipments contracted for in PO 3 and PO 4 (contracts between ISC and REI), *id.* ¶¶ 23–35, 37–53; (3) interfering with both the REI-ISC Non-Disclosure Agreement and the REI-Norris Non-Disclosure Agreement by communicating directly with Norris to try to circumvent using REI as an intermediary, *id.* ¶¶ 76–88; and (4)

---

[7] As a preliminary matter, REI argues that ISC and Matthew and Eric Berliner have included facts extraneous to the pleadings both in their Motion and attached as exhibits to thereto, *see* Mot. at 3–6 and D.Es. 91-2 & 91-3, and that those facts should be disregarded. Opp. at 2–3. The Court, however, need not determine whether it is permitted to consider those facts and exhibits at this stage of the proceedings because the Court has not considered these facts in deciding the Motion. These facts are almost exclusively relevant to causation and damages issues unrelated to the disposition of this Motion and therefore would not have been helpful to the Court in resolving the Motion even if the Court were to have concluded that it could consider them.

[8] It is unclear whether REI is also alleging that it had a confidentiality and non-disclosure agreement with Morouj that ISC and Matthew and Eric Berliner caused Morouj to violate. Unlike with its Norris-related allegations, *see* ACTPC ¶ 121, REI does not specifically plead that its contract with Morouj contained such a non-disclosure agreement. *See id.* REI does, however, plead that "Morouj disclosed RE[I]'s confidential business information . . . to ISC in breach of its obligations to RE[I]." *Id.* ¶ 37. This ambiguous sentence construction—and lack of any other reference to a non-disclosure agreement between Morouj and REI in the ACTPC—renders it impossible for the Court to determine that REI has plead that ISC and Matthew and Eric Berliner tortiously interfered with any non-disclosure agreement between Morouj and REI. In any event, even if this interference allegation were well-pled, the Court would find that a tortious interference claim based on this allegation is barred by the economic loss doctrine for the same reasons the REI-Norris Non-Disclosure Agreement claim is, *see infra*.

7

interfering with PO 3 and/or PO 4 by refusing to pay REI the contracted amount for shipments from Norris in another attempt to circumvent REI, *id.* ¶¶ 87–93.

ISC and Matthew and Eric Berliner argue that the economic loss doctrine compels the dismissal of each of REI's tortious interference claims against them. *See* Mot. at 11–22. The Court agrees.

### 1. Claims against ISC

Under New Jersey law, "[t]he economic loss doctrine prohibits the recovery in a tort action of economic losses arising out of a breach of contract." *Sun Chem. Corp. v. Fike Corp.*, 243 N.J. 319, 328 n.2 (2020). More specifically, this doctrine "prohibits plaintiffs from recovering in tort economic losses to which their entitlement *only flows from a contract*." *Bracco Diagnostics, Inc. v. Bergen Brunswig Drug Co.*, 226 F. Supp. 2d 557, 562 (quoting *Duquesne Light Co. v. Westinghouse Elec. Corp.*, 66 F.3d 604, 618 (3d Cir. 1995) (emphasis added)) (applying New Jersey law)[9]. The rationale behind this doctrine is, as "New Jersey courts have consistently held[,] that contract law is better suited to resolve disputes between parties where a plaintiff alleges direct and consequential losses that were within the contemplation of sophisticated business entities with equal bargaining power and that could have been the subject of their negotiations." *Travelers Indem. Co. v. Dammann & Co.*, 594 F.3d 238, 248 (3d Cir. 2010). In practice, "[t]he critical issue" in determining whether alleged tortious conduct is barred by the economic loss doctrine is whether the conduct is "extraneous to the contract." *Emerson Radio Corp. v. Orion Sales*, No. 95-6455, 2000 WL 49361, at *7 (D.N.J. Jan. 10, 2000), *aff'd*, 253 F.3d 159 (3d Cir. 2001). "An act that is in breach of a specific contractual undertaking" is not extraneous to the contract, *id.*, "unless the breaching party owes an independent duty imposed by law." *Saltiel v. GSI Consultants, Inc.*, 170

---

[9] All cases from this District cited hereinafter apply New Jersey law unless otherwise indicated.

8

N.J. 297, 316 (2002). Such independent duties include specific duties owed by physicians, attorneys, and product manufacturers. *Id.* at 317.

Here, REI has brought three claims for breach of contract against ISC (Counts I through III). ACTPC ¶¶ 94–116. And while REI separately brings tortious interference claims against ISC—some of which also mention contracts REI had with third-parties Norris and Morouj—every action ISC allegedly took that tortiously interfered with a contract between REI and a third-party is also an action REI simultaneously describes as a breach of a contract between ISC and REI. In other words, none of the alleged acts of tortious interference undertaken by ISC can be described without reference to a breach of an agreement between ISC and REI. *See supra* Section I.A (the first paragraph describes each of the ISC actions on which REI bases its tortious interference claims, all of which clearly stem from breaches of contracts between REI and ISC). For instance, REI alleges in Count I—a breach of contract claim against ISC—that ISC breached PO 3 and PO 4 (contracts between ISC and REI) by "demanding that RE[I] halt the shipments agreed to under the contracts [between ISC and REI] so that ISC could procure the same product elsewhere at more favo[]rable rates," ACTPC ¶ 97, and—at the same time—alleges in its tortious interference claims in Count IV that "ISC's breach of PO 3 and PO 4[] and Matthew Berliner's material misstatements . . . including that ISC needed to stop shipments . . . tortiously interfered with RE[I]'s contracts with Morouj," *id.* ¶ 118. Accordingly, REI's tortious interference claims against ISC are simply "contract claim[s] in tort claim clothing." *G&F Graphic Servs., Inc. v. Graphic Innovators, Inc.*, 18 F. Supp. 3d 583, 588–89 (D.N.J. 2014) (quoting *SRC Constr. Corp. v. Atl. City Hous. Auth.*, 935 F. Supp. 2d 796, 801 (D.N.J. 2013)).

Faced with this fatal overlap between its tortious interference and contract claims, REI does not even attempt to identify any duty owed to it by ISC that is independent of REI's contracts with

9

ISC. *See* ACTPC; Opp. Instead, REI simply argues that its "only redress against [ISC] is for tortious interference" because REI is not a party to ISC's contracts against third-parties Morouj and Norris. Opp. at 6. But REI's argument is belied by its own pleading. For instance, in Count I of the ACTPC—one of REI's breach of contract claims—REI treats Morouj's repudiation of the REI-Morouj Agreements, REI's subsequent termination of those agreements, and the judgment in favor of Morouj and against REI from litigation in the United Kingdom (and the other costs of that litigation) as consequential damages stemming from ISC's alleged breach of its contracts with REI. ACTPC ¶¶ 100–01. And later in the same pleading, in its tortious interference claims in Count IV, REI seeks damages stemming from the cancellation of the *same* Morouj contracts and *same* resulting litigation in the United Kingdom. *Id.* ¶ 118. It is therefore "clear to the Court that the damages sought by [REI] under" Count IV against ISC "are damages to which they were entitled, if at all, under the" contracts between REI and ISC. *Titan Stone, Tile & Masonry, Inc. v. Hunt Const. Grp., Inc.*, No. 05-3362, 2007 WL 174710, at *4 (D.N.J. Jan. 22, 2007). And where, as here, "a party is able to pursue remedies in another way, for instance, if the claims can be characterized as contract claims . . . it may not supplement its claims with allegations" sounding in tort. *MJF Elec. Contracting, Inc. v. Toms River Bd. of Educ.*, No. 20-7336, 2021 WL 1168962, at *6 (D.N.J. Mar. 26, 2021) (quoting *Dynalectric Co. v. Westinghouse Elec. Corp.*, 803 F. Supp. 985, 991 (D.N.J. 1992)).

Accordingly, the Court finds that Count IV of the ACTPC against ISC must be **DISMISSED *with prejudice*** pursuant to the economic loss doctrine.[10]

---

[10] Because the Court finds that REI's tortious interference claims against ISC are barred as a matter of law, amendment would be futile. *See Prudential Ins. Co. of Am. v. Bank of Am., Nat. Ass'n*, 14 F. Supp. 3d 591, 596 (D.N.J. 2014) ("Dismissal of a count in a complaint with prejudice is appropriate if amendment would be inequitable or futile."); *Ernande v. Lynch*, No. 10-5614, 2011 WL 13196609, at *1 (D.N.J. July 25, 2011) (amendment is futile where the claim is "not viable").

*2. Claims against Matthew and Eric Berliner*

REI's tortious interference claims must also be dismissed against Matthew and Eric Berliner because (1) they may not be held liable under a tort participation theory and (2) REI has not supported its allegation that Matthew and Eric Berliner acted outside the scope of their employment with ISC with well-plead facts.

*First*, neither Matthew nor Eric Berliner may be held liable for participating in ISC's tortious interference with contracts because the Court has found that the economic loss doctrine bars REI's tortious interference claims brought against ISC. As the New Jersey Supreme Court held in *Saltiel*, while a corporate officer may, in some cases, be liable for a tort committed by the corporation, the plaintiff must first "ple[a]d and support[] a cause of action sounding in tort." 170 N.J. at 315. "If, however, the breach of the corporation's duty to the plaintiff is determined to be governed by contract rather than tort principles, the participation theory of tort liability is inapplicable." *Id.* at 309. Accordingly, as the Court has determined that ISC's conduct is "governed by contract rather than tort principles," *see supra* Section III.A.2, the tort participation theory does not save REI's tortious interference claims against Matthew and Eric Berliner from being dismissed pursuant to the economic loss doctrine alongside REI's tortious interference claims against ISC.

Nor does REI's argument that Matthew and Eric Berliner acted outside the scope of their employment with ISC such that they "may be separately liable for their own tortious interference with REI's contracts with ISC" save these claims from dismissal. While REI is correct that "when an employee performs an act that is otherwise a tort, the employee is not relieved of liability simply because he or she acted on behalf of the employer," *Printing Mart-Morristown v. Sharp Elecs. Corp.*, 116 N.J. 739, 762 (1989); *see* Opp. at 6, REI has not established that Matthew or Eric Berliner committed a tort. Employees or officers of a corporation, like Matthew and Eric Berliner,

11

may only be held liable for interfering with a contractual relationship involving the corporation if they are acting "not on behalf of their employer, but for their own personal interests and motives," *Cataldo v. Moses*, No. 02-2588, 2006 WL 1450382, at *11 (N.J. Super. Ct. App. Div. May 26, 2006).

Here, REI has not sufficiently plead that Matthew and Eric Berliner acted for their non-corporate personal interests and motives in tortiously interfering with REI's contracts. REI argues that it has pled that Matthew and Eric Berliner's actions were taken for "personal, non-corporate reasons motivated by their personal animus for Mr. Aliotta, and their desire to 'make him go away quietly.'" Opp. at 8 (quoting ACTPC ¶¶ 66–67). But the portions of its ACTPC REI relies on for this argument—ACTPC ¶¶ 66-67—relate only to ISC's business practices in Poland, which are completely unrelated to the acts REI alleges tortiously interfered with its contracts. *Compare* ACTPC ¶¶ 54–75 (allegations regarding Polish operations), *with* ACTPC ¶¶ 117–23 (tortious interference cause of action).[11] And REI does not point to any other allegations suggesting that Matthew and Eric Berliner's actions were taken for personal, non-corporate reasons, *see* Opp., nor has the Court been able to independently identify any such allegations, *see* ACTPC. In fact, nearly all of the actions that REI alleges tortiously interfered with its contracts were taken by Matthew Berliner but are also ascribed to *ISC* by REI. *Compare*, *e.g.*, *id.* ¶ 36 (alleging that Morouj discussed the reasons behind ISC's request to halt deliveries with Matthew Berliner), *with id.* ¶ 37 (characterizing same conversation as "Morouj's conversation with ISC"). Setting aside the paucity

---

[11] Moreover, even if these Polish operations allegations were related, REI did not—as it argues in its Opposition—plead that Matthew and Eric Berliner acted for personal, non-corporate reasons, because REI's ACTPC states that the same actions it now characterizes as "personal, non-corporate" were part of "ISC's plot" to harm Aliotta. *See* ACTPC ¶¶ 66–67. REI cannot have it both ways.

12

of allegations with respect to Eric Berliner specifically,[12] REI cannot allege, as they do in essence here, that Matthew and Eric Berliner are the "key figure[s] in orchestrating the alleged wrongdoing" for ISC and also that they "acted outside of the scope of their relationships with" ISC. *See Emerson*, 2000 WL 49361, at *10.

Because the well-pled facts with respect to REI's tortious interference claims against Matthew and Eric Berliner do not "allow[] the court to draw the reasonable inference that [they] [are] liable for the misconduct alleged," *Iqbal*, 556 U.S. at 678, the Court will therefore **DISMISS** Count IV of the ACTPC against Matthew and Eric Berliner ***without prejudice***.

### B. Count Five (Fraud in the Inducement) Will Be Dismissed

REI also brings a fraud in the inducement claim against ISC and Matthew and Eric Berliner, alleging that ISC and Matthew Berliner[13] misrepresented ISC's need to halt shipments scheduled to arrive in the fall of 2019 under PO 3 to induce REI "to modify and/or not enforce its binding contracts with ISC." ACTPC ¶¶ 125, 128.

ISC and Matthew and Eric Berliner argue that the economic loss doctrine compels the dismissal of REI's fraud in the inducement claim as it did REI's tortious interference claims. Mot.

---

[12] The only allegations relevant to REI's tortious interference claims the ACTPC ascribes to Eric Berliner are general allegations that (1) "[i]n or about June 2022, Mr. Aliotta learned that Matthew and Eric Berliner were working with Norris and Um-Algura and communicating with Norris to circumvent RE[I] . . . ," *see* ACTPC ¶ 87; and (2) "RE[I] has been further caused to expend considerable attorney's fees defending against the UK litigation totaling approximately $250,000, which was instituted as a direct result of ISC's breach of contract and Matthew and Eric Berliner's other wrongful actions," *id.* ¶ 53.

[13] REI's only fraudulent inducement-related allegation against Eric Berliner is that "RE[I] has been further caused to expend considerable attorney's fees defending against the UK litigation totaling approximately $250,000, which was instituted as a direct result of ISC's breach of contract and Matthew and Eric Berliner's other wrongful actions." ACTPC ¶ 53. The Court notes that this allegation would be insufficient to sustain a fraudulent inducement claim against Eric Berliner even if the Court did not dismiss Count V against all Third-Party Defendants and Counterclaim Defendant for the reasons explained *infra*.

13

at 22–30.  The Court agrees that dismissal of REI's fraud in the inducement claim is warranted, but on different grounds.  The Court instead finds that REI's fraud in the inducement claim is fatally inconsistent with its breach of contract claims based on the same allegedly fraudulent actions, unless the inconsistent facts and legal theories underlying those claims are plead in the alternative.

Courts in this District applying New Jersey law have "long recognized an exception to the general application of the economic loss doctrine to fraud claims, holding that claims for fraud in the inducement may proceed in certain circumstance." *Zurich Am. Ins. Co. v. Asphalt Paving Sys., Inc.*, No. 22-1535, 2023 WL 179962, at *4 (D.N.J. Jan. 13, 2023).  But, to survive the application of the economic loss doctrine, "only those pre-contractual misrepresentations that are extraneous to the parties' contract may be brought alongside a breach of contract claim."  *Montclair State Univ. v. Oracle USA, Inc.*, No. 11-2867, 2012 WL 3647427, at *4 (D.N.J. Aug. 23, 2012).

REI accordingly argues that its fraudulent inducement claim arises not from ISC's breach of PO 3 and PO4—the contracts subject to REI's breach of contract claims—but, instead, from ISC inducing REI to modify PO 3 and PO 4.  Opp. at 8–9.  According to REI, its fraud in the inducement claim based on this alleged modification is viable because "this [D]istrict has recognized . . . [that] 'a cognizable fraud in the inducement claim can . . . occur during contract formation or modification.'"  *See id.* at 9 (quoting *State Cap. Title & Abstract Co. v. Pappas Bus. Servs., LLC*, 646 F. Supp. 2d 668, 682 (D.N.J. 2009)).  But this District did *not* in fact recognize that a fraud in the inducement claim can occur during contract modification in *Pappas*.  The quotation REI characterizes as this District recognizing as such is in actuality the *Pappas* court's recitation of the defendants' argument in that case, not the court's own assertion (much less

holding).[14] And the Court has been unable to independently identify any opinions from the New Jersey state courts or any federal court applying New Jersey law specifically holding that, under New Jersey law, a fraud in the inducement claim may arise from contract modification when brought alongside a breach of contract claim.[15] That said, the Court does not disagree with REI that a fraud in the inducement claim based on a contract modification could be cognizable in some circumstances. In any event, the Court need not even reach this question, because, as pled, REI's fraud in the inducement claim is based on facts inconsistent with the facts underlying its breach of contract claims.

REI alleges that ISC, through Matthew Berliner, fraudulently misrepresented that it could not accept raw gum shipments according to the schedule set forth in PO 3 (a contract between ISC and REI) and demanded that these shipments be halted in order to induce REI "to modify and/or not enforce" PO 3, causing REI to modify PO 3 to change the shipment schedule (and quantities) set forth therein. *See* ACTPC ¶¶ 20–23, 125, 128. At the same time, REI alleges that ISC breached PO 3 by "demanding that RE[I] halt the shipments agreed to under" PO 3 and, in the alternative, that "ISC's material misrepresentations of their need to halt the . . . shipments [under PO 3]

---

[14] That the quotation on which REI relies is simply the *Pappas* court's recitation of the defendants' argument is obvious from the face of the opinion, *see id.*, but the Court has nevertheless confirmed that this argument—and more specifically this reference to modification—appears nearly verbatim in the relevant brief filed by the *Pappas* defendants, *see State Cap. Title & Abstract Co. v. Pappas Bus. Servs., LLC*, No. 08-03619, D.E. 9 at 2 & 12. This Court also notes that the *Pappas* court did not reach—much less decide—the issue of whether fraudulent inducement of a contract modification is cognizable because it found that the plaintiffs had sufficiently stated a claim regarding the initial formation of the relevant agreement. *See Pappas*, 646 F. Supp. 2d at 682.

[15] The Supreme Court of Wisconsin, however, has found the "fraud in the inducement exception to the economic loss doctrine . . . inapplicable" to a fraudulent inducement claim arising from a contract modification because the misrepresentations at issue were not "extraneous to" the contract a party alleged it was fraudulently induced into modifying. *Digicorp, Inc. v. Ameritech Corp.*, 262 Wis. 2d 32, 60 (2003).

nevertheless had the effect of destroying or injuring RE[I]'s right to receive the fruits of PO 3" such that ISC breached the covenant of good faith and fair dealing. ACTPC ¶¶ 97, 113.

These set of facts alleged by REI could only reasonably be read to suggest one of the following: (1) that, after ISC demanded that the shipping schedule set forth in PO 3 be changed, ISC and REI modified PO 3 to include a new shipping schedule, or (2) that ISC's demand that the shipping schedule set forth in PO 3 be halted breached the schedule-related terms in PO 3 and there was no modification of PO 3. If the former is true, it may be possible that REI could state a claim for being fraudulently induced into entering into a modified version of PO 3 with new schedule-related terms and therefore recover damages based on being induced into modifying PO 3; but REI could not, on the same facts, also recover for breach of the schedule-related terms of the original PO 3. *Cf. Smith v. CitiMortgage, Inc.*, 702 F. Supp. 3d 247, 259 (D.N.J. 2023) (in a modified contract, only the terms from the original contract not changed in the modified contract remain in effect); *Clark v. JPMorgan Chase Bank, N.A.*, No. 21-9391, 2023 WL 7501396, at *4 (N.D. Cal. Nov. 12, 2023) (dismissing fraud in the inducement claim based on contract modification and only analyzing breach of contract claim with respect to the terms of the contract as modified, not the original contract).

In other words, REI's legal and factual allegations as pled suggest two inconsistent factual circumstances: one where REI and ISC modified PO 3 and one where they did not modify PO 3. While Rule 8 of the Federal Rules of Civil Procedure permits "inconsistency in both legal and factual allegations" when those inconsistent allegations are pled in the alternative, *Independent Enterprises Inc. v. Pittsburgh Water & Sewer Auth.*, 103 F.3d 1165, 1175 (3d Cir. 1997), REI has not pled its factual and legal allegations suggesting that PO 3 was modified (and therefore that it was fraudulently induced into modifying PO 3) and its factual and legal allegations suggesting that

PO 3 was not modified (and therefore that ISC breached PO 3 in unmodified form) in the alternative.[16] *See* ACTPC. Accordingly, the Court will **DISMISS** Count V of the ACTPC ***without prejudice*** to REI amending its ACTPC to either plead consistent factual and legal allegations or plead inconsistent factual and legal allegations in the alternative.

      **C.**      **Count VI (Civil Conspiracy) Will Be Dismissed**

ISC and Matthew and Eric Berliner argue that REI's civil conspiracy claim should be dismissed because there is no viable underlying tort cause of action. Mot. at 31. The Court agrees.

"Civil conspiracy claims under New Jersey law require the plaintiff to plead a viable underlying tort claim." *Dill v. Yellin*, 725 F. Supp. 3d 471, 484 (D.N.J. 2024). REI's civil conspiracy claim is primarily premised on allegations that ISC and Matthew and Eric Berliner conspired with Nwachukwu (the owner of a company with which ISC worked), Um Algura (another company with which ISC worked), and third-party supplier of gum Norris to breach contracts with ISC. ACTPC ¶¶ 131–34. But "[a] breach of contract claim is not a tort claim and therefore cannot serve as the predicate for a civil conspiracy claim." *Dill*, 725 F. Supp. 3d at 484; *see also, e.g., Speedwell, LLC v. Town of Morristown*, No. 21-18796, 2023 WL 2207588, at *9 (D.N.J. Feb. 24, 2023) (dismissing civil conspiracy claim premised on a breach of contract); *Trico Equip., Inc. v. Manor*, No. 08-5561, 2011 WL 705703, at *8 (D.N.J. Feb. 22, 2011) (same).

REI admits that its breach of contract claims cannot sustain a civil conspiracy claim. *See* Opp. at 9. REI nevertheless counters that it has sufficiently pled that the alleged conspirators

---

[16] While fraud in the inducement and breach of contract claims brought together do not generally require alternative pleading, *see, e.g.*, *Grasso Foods, Inc. v. Wynn Env't Sales Co.*, No. 17-6430, 2018 WL 3455479, at *3 (D.N.J. July 18, 2018), the issue with the fraud in the inducement claim here is not whether it based on the same conduct as a breach of contract claim (and therefore subject to the economic loss doctrine) as other courts have considered, but rather that it is based on a factual and legal theory that is inconsistent with the factual and legal theory set forth in some of REI's breach of contract claims.

conspired to "financially harm REI, including through a series of torts committed by ISC and . . . [Matthew and Eric] Berliner[] personally to interfere with REI's business." *Id.*  Because the Court now dismisses REI's tort claims, however, REI has not in fact pled a viable tort claim,[17] so the Court will **DISMISS** REI's civil conspiracy claim ***without prejudice***.

IV.     **Conclusion**

For the foregoing reasons, ISC and Matthew and Eric Berliner's Motion is **GRANTED**. An appropriate Order accompanies this Opinion.

Dated: September 9, 2025

Evelyn Padin, U.S.D.J.

---

[17] The parties make no mention of the remaining alleged misconduct in REI's civil conspiracy cause of action:  that "in or around March 2022, Matthew and Eric Berliner attempted to work with an unknown individual to surreptitiously and unlawfully gain access to Mr. Aliotta's personal cell phone and files," ACTPC ¶ 136.  *See* Mot.; Opp.; Reply.  Nevertheless, for the avoidance of doubt, the Court finds that allegation—which REI does not reference anywhere else in its ACTPC, much less provide supporting facts for—insufficient to allege the viable tort necessary to sustain REI's civil conspiracy claim.  *See Iqbal*, 556 U.S. at 678